1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAUL MONTANO,

11            Plaintiff,              No. 2:07-cv-0800 KJN P

12        vs.

13   SOLOMON, et al.,

14            Defendants.             <u>ORDER</u>

15   _____/

16   I.  <u>Introduction</u>

17            Plaintiff Raul Montano is a state prisoner, currently incarcerated at San Quentin

18   State Prison.  Plaintiff proceeds in forma pauperis and without counsel[1] in this civil rights action

19   filed pursuant to 42 U.S.C. § 1983.  This case proceeds on plaintiff's Second Amended

20   Complaint, against one defendant, Dr. Richard Tan, M.D., based on defendant's one-time

21   ////

22   ////

23

24        [1]  The court granted plaintiff's request for appointment of counsel on June 7, 2011.  (Dkt.
     No. 75.)  Pro bono counsel was appointed on August 22, 2011.  (Dkt. No. 77.)  However,
25   appointed counsel later moved to withdraw her representation of plaintiff (Dkt. No. 84), which
     the court granted on February 28, 2012 (Dkt. No. 88).  Plaintiff has since proceeded in this action
26   without counsel.

1   medical treatment of plaintiff when plaintiff was incarcerated at California State Prison-Solano.[2]

2   The parties consented to the jurisdiction of the magistrate judge for all purposes.  28 U.S.C. §

3   636(c); Local Rule 305(a).  (See Dkt. Nos. 3, 29, 30.)  Pending is defendant's motion for

4   summary judgment.[3]  (Dkt. No. 100.)  Plaintiff filed an opposition (Dkt. No. 107), and defendant

5   filed a reply (Dkt. No. 109).  For the reasons that follow, the court grants defendant's motion for

6   summary judgment.

7   II.  Background

8               This case proceeds on plaintiff's Second Amended Complaint ("SAC"), filed June

9   4, 2008.  (Dkt. No. 19.)  The court found, upon initial screening of the SAC, that it appeared to

10  state a potentially cognizable Eighth Amendment claim against Dr. Tan.  (Dkt. No. 21.)  Pursuant

11  to the SAC, plaintiff alleges that, on May 6, 2005, while he was incarcerated at California State

12  Prison-Solano ("CSP-SOL"), plaintiff was seen once by Dr. Tan, a CSP-SOL physician.  (Dkt.

13  No. 19 at 7-8.)  Plaintiff alleges that, despite experiencing prior side effects from taking

14  Naproxen, Dr. Tan renewed that prescription and added a prescription for Baclofen; plaintiff was

15  also previously prescribed Chlorpheiramine.  (Id.)  Plaintiff alleges that he thereafter took all

16  three prescribed medications, which caused a rash and itching all over his body; and that, when

17  he attempted to take a shower to reduce his discomfort, plaintiff lost consciousness and fell,

18  sustaining injuries to his back, face, nose, and mouth.  (Id. at 8-9.)  Plaintiff claims that Dr. Tan's

19

20        [2]  Defendant Tan is sued in both his individual and official capacities.  (SAC (Dkt. No.
    19) at 4, 6.)  However, defendant is correct in his contention that this action may proceed against
21  him only in his individual capacity.  (Dkt. No. 100-1 at 9-10.)  "Plaintiff's claims against the . . .
    defendant-physicians in their official capacities are barred by the Eleventh Amendment[;]
22  Section 1983 is also precluded because it only extends liability to 'persons.'  States and state
    officials in their official capacities are not 'persons' under that section."  Kenney v. Hawaii, 109
23  F. Supp. 2d 1271, 1278 (D. Haw. 2000) (citing, inter alia, Will v. Michigan Dept. of State Police,
    491 U.S. 58, 71 (1989), and Doe v. Lawrence Livermore Nat'l Laboratory, 131 F.3d 836, 839
24  (9th Cir. 1997).

25        [3]  Defendant timely informed plaintiff of the requirements for opposing a motion for
    summary judgment.  (See Dkt. No. 100-3.)  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012);
26  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).

1  failure to properly examine plaintiff and assess plaintiff's alleged sensitivity to prescribed

2  medication and the potential interactions of those medications, causing injury to plaintiff,

3  constituted deliberate indifference to plaintiff's serious medical needs in violation of the Eighth

4  Amendment.  (Id. at 10-1.)  Plaintiff seeks damages and injunctive relief.  (Id. at 11-2.)

5             Defendant moves for summary judgment on the ground that plaintiff has failed to

6  demonstrate the existence of any material factual dispute precluding judgment for defendant as a

7  matter of law.

8  III.  Legal Standards for Summary Judgment

9             Summary judgment is appropriate when it is demonstrated that the standard set

10 forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

11 the movant shows that there is no genuine dispute as to any material fact and the movant is

12 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

13            Under summary judgment practice, the moving party always bears
               the initial responsibility of informing the district court of the basis
14             for its motion, and identifying those portions of "the pleadings,
               depositions, answers to interrogatories, and admissions on file,
15             together with the affidavits, if any," which it believes demonstrate
               the absence of a genuine issue of material fact.

16

17 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

18 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

19 only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

20 Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

21 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

22 Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

23 burden of production may rely on a showing that a party who does have the trial burden cannot

24 produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

25 should be entered, after adequate time for discovery and upon motion, against a party who fails to

26 make a showing sufficient to establish the existence of an element essential to that party's case,

1  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

2  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

3  necessarily renders all other facts immaterial."  Id. at 323.

4        Consequently, if the moving party meets its initial responsibility, the burden then

5  shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.

6  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting

7  to establish the existence of such a factual dispute, the opposing party may not rely upon the

8  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

9  form of affidavits, and/or admissible discovery material in support of its contention that such a

10  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

11  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

12  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

15  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

16  1436 (9th Cir. 1987).

17        In the endeavor to establish the existence of a factual dispute, the opposing party

18  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

19  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

20  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

21  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

22  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

23  committee's note on 1963 amendments).

24        In resolving a summary judgment motion, the court examines the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

26  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4

1   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

2   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

3   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

5   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

6   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

7   show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

8   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9   'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

10  IV.  Undisputed Facts

11          The following facts are undisputed by the parties or, following the court's review

12  of the record, have been deemed undisputed for purposes of the pending motion.  Relevant

13  disputed facts are also noted.  The court notes that the parties have submitted only limited

14  original evidence (most of plaintiff's pertinent medical records are not included), instead relying

15  primarily on their respective affidavits.[4]

16          1.  At all relevant times, plaintiff was an inmate at CSP-SOL, and defendant was a

17  physician and surgeon, licensed by the state of California and employed by the California

18  Department of Corrections and Rehabilitation ("CDCR") to work at CSP-SOL.

19  ////

---

20

21      [4] Defendant's evidence consists of his declaration; copies of the First and Second Level responses to plaintiff's pertinent administrative grievance; a copy of the 2002 judgment on

22  plaintiff's current convictions and sentencing; and a copy of the 2009 judgment on plaintiff's conviction for the 2007 possession of illegal substances while in prison.  (See Dkt. No. 101

23  (Defendant's "Appendix of Exhibits").)  Defendant has submitted no original medical evidence. Plaintiff has submitted limited medical evidence, specifically, documentation of his pertinent

24  prescriptions; his inmate pass to the health clinic dated April 14, 2005; a picture of plaintiff's facial injuries (which lacks clarity); and a copy of his original and further appealed administrative

25  grievance.  (See Dkt. No. 19 (SAC Exhibits).)  Plaintiff's further exhibit, reportedly depicting his blood pressure reading on April 14, 2005 (id., Exh. B), is illegible.  In addition, in his opposition

26  to the pending motion, plaintiff has submitted a copy of Chapter 11 ("Medication Management") of CDCR's Division of Correctional Health Care Services ("DCHCS") Manual.

2.  On March 16, 2005, another physician (Dr. Soloman) prescribed for plaintiff Naproxen[5] (500 mg twice a day) for pain, and Chlorpheniramine (4 mg three times a day) for allergic reactions/common cold.  (Montano Decl. (Dkt. No. 108) at 2; SAC at 6-7 and Exh. A.)

3.  Plaintiff avers that, on April 14, 2005, he "took his medication as prescribed," but 45 minutes later experienced a rash and itching all over his body.  Plaintiff avers that he was taken to the CSP-SOL medical clinic, where he exhibited extremely low blood pressure and was told to drink lots of water.  Plaintiff avers that the duty nurse contacted Dr. Soloman who directed the nurse to provide plaintiff with a pass to return to the clinic the following day. (Montano Decl. at 2; SAC at 6-7, and Exhs. B, C.)  Plaintiff states, however, that he was not seen again in the clinic until his appointment with defendant Tan on May 6, 2005.

4.  On May 6, 2005, plaintiff was seen in the medical clinic by Dr. Tan; this is the only medical appointment plaintiff had with defendant.  Dr. Tan renewed plaintiff's prescription for Naproxen, and prescribed Baclofen (10 mg twice a day), a muscle relaxant.  (Montano Decl. at 2; SAC at 6-7 and Exh. B; see also Tan Decl. at 3.)  Plaintiff avers that Dr. Tan did not examine him; did not consult with plaintiff about his medical records; and merely told plaintiff to lose weight and exercise.  (Montano Decl. at 2.)  Dr. Tan avers that he provided plaintiff with the following examination and treatment (Tan Decl. (Dkt. No. 101-3) at 3):

> On that visit, I reviewed [plaintiff's] vital signs and examined his back.  I found no scoliosis and no kyphosis and no point tenderness on his back.  He could flex his spine more than 90 degrees.  I reviewed the lumbar spine x-ray report (dated April 4, 2005) which showed mild degenerative changes.  [¶]  I prescribed naprosyn, which Mr. Montano was already taking under prescription, and baclofen, a muscle relaxant, and referred him to physical therapy for his back problem.  I counseled Mr. Montano about exercise; quitting smoking and how to lift heavy objects to prevent another back pain.  I provided Mr. Montano with information about stretching and back exercise.

---

[5]  The court uses the spelling "Naproxen" throughout this order, including in quoted passages that rely on the alternative spelling "Naprosyn."

1        5.  Plaintiff avers that, at approximately noon on May 6, 2005, he took all three

2  medications "as prescribed:  one Naproxen, one Chlorpheniramine, and one Baclofen."

3  (Montano Decl. at 2.)  Plaintiff avers that these medications, particularly Naproxen, caused a rash

4  and itching, then unconsciousness when plaintiff sought to soothe his symptoms with a shower,

5  resulting in a bleeding and broken nose (which allegedly causes ongoing difficulty with

6  breathing); bleeding mouth and gums, with tooth pain (allegedly causing ongoing sensitivity to

7  hot and cold temperatures); and back pain (allegedly causing ongoing back pain).  Plaintiff avers

8  that, in May 2012, another CDCR physician, Dr. Rohrer, "noted that the allergic reasons I

9  suffered from [were] due to the prescription of Naproxen, so the prescription was ended."  (Id. at

10  3.)  Plaintiff's exhibits include two May 9, 2005 prescription summaries:  (1) the first is a

11  prescription for Diphenhydramine, prescribed by Dr. Rohrer; and (2) the second indicates that

12  plaintiff's prescription for Naproxen, ordered May 6, 2005, be stopped.

13        6.  Defendant avers that, by noon on May 6, 2005, plaintiff could not have

14  commenced taking his prescription for Baclofen because defendant "ordered baclofen on May 6,

15  2005 and a nurse noted my order at 11:30 AM on May 6, 2005.  [Thus,] Mr. Montano was not

16  able to receive 'baclofen' from the pharmacy to take at noon on May 6, 2005."  (Tan Decl. at 3.)

17        7.  Defendant relies on the official responses to plaintiff's underlying

18  administrative grievance which indicate that plaintiff did not suffer a broken or otherwise

19  deformed nose, or chipped teeth, but that he did continue to complain of difficulty breathing,

20  sensitive teeth, and back pain.[6]

21

22      [6] Although the available record indicates that plaintiff may have pursued this grievance
only through the Second Level (obtaining a "partial grant"), defendant does not assert the

23  affirmative defense that plaintiff failed to exhaust his administrative remedies, thus waiving the
defense.  See Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003).

24      The responses to plaintiff's administrative grievance provided in pertinent part:

25      First Level Review, April 14, 2006 (Dkt. No. 101-4 at 3): [X]-rays
of your nasal bones indicate you do not have a nasal fracture.

26  There is also no deformity of the nose.  You were evaluated on

1  V.  Discussion

2         A.  Legal Standards for Eighth Amendment Deliberate Indifference Claim

3              To establish deliberate indifference to a serious medical need, a plaintiff must

4  show that the defendant knew of, and disregarded, an excessive risk to plaintiff's health or safety.

5  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "In the Ninth Circuit, the test for deliberate

6  indifference consists of two parts.  First, the plaintiff must show a serious medical need by

7  demonstrating that failure to treat a prisoner's condition could result in further significant injury

8  or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the

9  defendant's response to the need was deliberately indifferent.  This second prong . . . is satisfied

10  by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical

11  need and (b) harm caused by the indifference."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

12  2006) (internal citations, punctuation and quotation marks omitted).  Stated differently, a finding

13  of deliberate indifference requires proof of the following objective and subjective factors:

14              [A]n inmate seeking to prove an Eighth Amendment violation
               must "objectively show that he was deprived of something

15

16              May 12, 2005, by dental.  You do not have any loose [teeth] or
               chips in your front teeth.  It is recommended that you submit a sick
17              call request to be evaluated by dental for your sensitive teeth.  A
               facial bone x-ray has been ordered to rule out any other fractures.
18              You were evaluated March 14, 2006, for lower back pain.  You
               have been prescribed Motion.  You were advised to loose (sic)
19              weight, exercise and given medical information about correction
               (sic) posture.
20
               Second Level Review, May 16, 2006 (Dkt. No. 101-5 at 3):
21              [X]-rays of your nasal bones indicate you do not have a nasal
               fracture or deformity of the nose.  You were seen by Dr. Zheng,
22              Dentist.  There was no mention or complaint of sensitivity to hot or
               cold.  Again, it is recommended that you submit a sick call request
23              to be evaluated by dental for your sensitive teeth if this continues
               to be a problem.  You were evaluated on March 14, 2006, for lower
24              back pain with a follow-up on May 6, 2006.  You were prescribed
               ibuprofen for the back pain.  You were advised to loose (sic)
25              weight, exercise and given medical information about correct
               posture.  You also will be referred to ENT for evaluation of
26              difficulty breathing.

'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." [Foster v. Runnels, 554 F.3d 807 (9th Cir. 2009)] at 812 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The second step, showing "deliberate indifference," involves a two part inquiry. First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. Farmer, 511 U.S. at 837. This part of our inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious. See id. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious."). Second, the inmate must show that the prison officials had no "reasonable" justification for the deprivation, in spite of that risk. See id. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.").

Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Prisons officials defending a deliberate indifference claim may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, supra, 511 U.S. at 844. Liability may also be avoided by demonstrating that defendant's response was reasonable in light of all the circumstances. Id. at 844-45.

B. Analysis

The current record contains minimal medical evidence, and lacks discovery responses or deposition transcripts. The available evidence consists of little more than the parties "dueling affidavits," which present the parties' respective, and differing, versions of the salient facts. These circumstances present special challenges to the court. While an affidavit or declaration may be relied upon to support or oppose a motion for summary judgment, Fed. R. Civ. P. 56(c)(4), "[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder," Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing, inter alia, Anderson,

1   supra, 477 U.S. at 255).  "[S]ummary judgment cannot be used to resolve swearing contests

2   between litigants."  Payne, 337 F.3d at 770.  A summary judgment motion that rests on the

3   parties' differing versions of relevant facts will preclude summary judgment if the disputed facts

4   are material.  See Fed. R. Civ. P. 56(a).

5           Construing the facts in the light most favorable to plaintiff, plaintiff has

6   demonstrated that, on April 14, 2005, while taking prescriptions for both Naproxen and

7   Chlorpheniramine, he first experienced a rash and itching, which plaintiff now construes as an

8   allergic reaction to Naproxen.  Plaintiff avers that this allergic response should have been noted

9   in his medical file when he was seen at the Primary Clinic on April 14, 2005.  Plaintiff was next

10  seen by medical staff on May 6, 2005, when he was treated by defendant Dr. Tan.  Plaintiff avers

11  that Dr. Tan should have reviewed plaintiff's medical file and concluded that plaintiff was

12  allergic to Naproxen, but instead renewed that prescription and added Baclofen.  Plaintiff avers

13  that he thereafter took all three of his medications (Naproxen, Chlorpheniramine and Baclofen),

14  and again experienced a rash and itching, as well as loss of consciousness; plaintiff avers that this

15  incident demonstrates his second -- and preventable -- allergic reaction to Naproxen.

16          Plaintiff asserts that his "core claim" is that defendant "knew or should have

17  known that failing to review Plaintiff's medication records to determine that his prescription for

18  Naproxen should [be] ended amounts to deliberate indifference. . . ."  (Dkt. No. 107 at 3.)

19  Plaintiff relies on Chapter 11 of CDCR's Division of Correctional Health Care Services

20  ("DCHCS") Manual, which requires that all correctional health care and custody staff monitor

21  and track the medications prescribed to each inmate-patient.[7]

22
23          [7]  Chapter 11 ("Medication Management"), of the DCHCS Manual provides in pertinent part (Chap. 11, §§ I-III(A)(1)):

24          I.  POLICY:  The California Department of Corrections and
25          Rehabilitation (CDCR) shall provide accurate and timely
            management of medications to inmate-patients.  Medication
26          management is a shared responsibility requiring cooperation
            between correctional health care and custody staff.

1    However, defendant's alleged one-time failure to abide by these regulations, or to

2  identify plaintiff's prior alleged allergic reaction and its cause, and therefore to refrain from re-

3  filling plaintiff's prescription for Naproxen, demonstrate no more than "mere negligence," which

4  is  insufficient to establish liability under a deliberate indifference theory.  See Farmer, supra,

5  511 U.S. at 835; see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

6  negligence in diagnosing or treating a medical condition, without more, does not violate a

7  prisoner's Eighth Amendment rights") (internal citation and punctuation changes omitted).

8    In Toguchi, the parents of an inmate who died during his incarceration brought a

9  civil rights action claiming that defendant prison physician was deliberately indifferent to their

10  son's serious medical needs by, inter alia:  (1) treating him with Cogentin when defendant

11  allegedly knew that he had been hospitalized in 1995 for a negative reaction to the medication;

12  (2) failing to consider the potential side effects associated with replacing Seroquel with Triafon;

13  (3) failing to consider the known risks associated with withdrawal from Klonopin; and (4) failing

14  "to consider the negative effects that could result from the cross-potentiation of Zoloft, Benadryl,

15  and Cogentin. . . ."  Toguchi, 391 F.3d at 1057-58.

16    The Ninth Circuit Court of Appeals affirmed the district court's grant of summary

17  judgment for defendant, reasoning in pertinent part that:  (1) there was no evidence in the record

18  to rebut defendant's averment that "she did not believe that Cogentin use presented a serious risk

19  of harm to" plaintiffs' son; (2) defendants failed to demonstrate a material question of fact

20  concerning the replacement of Seroquel with Triafon, noting that "a mere difference of medical

21  opinion is insufficient, as a matter of law, to establish deliberate indifference," and that plaintiffs

22  _____

23    II.  PURPOSE:  To provide appropriate medications to inmate-
     patients in order to attain and maintain optimum health.

24

25    III.  PROCEDURE:  (A) General Requirements:  (1)  Licensed
     health care staff shall dispense, administer, monitor, and track all
     medications prescribed by authorized prescribers within the scope
26    of licensure under California law . . . .

1  had failed to demonstrate that "the chosen course of treatment was medically unacceptable under

2  the circumstances," or "chosen in conscious disregard of an excessive risk to the prisoner's

3  health;" Toguchi, 391 F. 3d at 1058 (citation and internal punctuation marks omitted); (3)

4  "[t]here is absolutely no indication in the record that [defendant] was aware of a risk that

5  [plaintiffs' son] was suffering from Klonopin withdrawal;" and (4) in light of the entire record,

6  the opinion of plaintiff's experts that defendant had disregarded known serious risks associated

7  with combining Zoloft, Benadryl, and Cogentin failed to raise any reasonable inference that

8  defendant exercised "a *conscious* disregard of a serious risk of harm," id. at 1059 (original

9  emphasis).  The Court of Appeals stated in conclusion:

10
11
12
13
> Deliberate indifference is a high legal standard.  A showing of
> medical malpractice or negligence is insufficient to establish a
> constitutional deprivation under the Eighth Amendment. . . .
> Because no genuine issue of fact was raised regarding
> [defendant's] subjective knowledge and conscious disregard of a
> substantial risk of serious injury to [plaintiffs' son], the district
> court properly entered summary judgment in favor of [defendant]
> on the § 1983 claim.

14

15  Toguchi, 391 F.3d at 1060-61.

16         Similarly, in the present case, even when the facts are construed in the light most

17  favorable to plaintiff, it is reasonable to infer no more than negligence by Dr. Tan.  "Under

18  California law, '[t]he elements of negligence are:  (1) defendant's obligation to conform to a

19  certain standard of conduct for the protection of others against unreasonable risks (duty); (2)

20  failure to conform to that standard (breach of the duty); (3) a reasonably close connection

21  between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss

22  (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax,

23  158 Cal. App. 4th 983, 994 (2008) (internal quotation marks omitted); see also Hoesl v. United

24  States, 451 F. Supp. 1170, 1173 (N.D. Cal. 1978) ("In the typical malpractice case a doctor

25  negligently makes a mistaken diagnosis, administers the wrong treatment to his patient or fails to

26  administer the right treatment because of that mistake, and thereby injures the patient's physical

1  or mental health"), aff'd, 629 F.2d 586 (9th Cir. 1980).

2          While defendant does not assert that his actions may have been "merely

3  negligent," instead maintaining that, at all times, he "acted within the standard of care," it is

4  reasonable to infer no more than that Dr. Tan erred by failing to read in plaintiff's medical file

5  that he had a prior allergic reaction to Naproxen.  Significantly, plaintiff does not contend that

6  Dr. Tan observed such treatment note, but nonetheless renewed plaintiff's Naproxen prescription.

7  Moreover, no evidence has been submitted from which to infer that such a treatment note

8  actually exists.  Other evidence of record suggests the opposite, e.g., Dr. Tan's statement that

9  plaintiff "never mentioned any Naproxen allergy during the May 6, 2005 visit.  He was already

10  prescribed Naproxen (since 2004) for various reasons.  There was no information about any

11  Naproxen allergy or Naproxen sensitivity."  (Tan Decl. (Dkt. No. 101-3) at 3.)  In addition,

12  according to Dr. Tan's summary of his treatment notes, plaintiff's primary concern at his May 6,

13  2005 medical appointment was his back pain, not his alleged allergic reaction.  "[M]ere

14  allegation and speculation do not create a factual dispute for purposes of summary judgment."

15  Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted).

16          Review of similar cases demonstrates that plaintiff's allegations cannot sustain a

17  deliberate indifference claim.  Here, as in Toguchi, there is no evidence that Dr. Tan at any time

18  believed that refilling plaintiff's prescription for Naproxen (or, for that matter, adding Baclofen,

19  or combining all three medications) presented a serious risk of harm to plaintiff; or that Dr. Tan

20  chose this course of treatment in conscious disregard of such risk.  In a similar case, Martinez v.

21  United States,  812 F. Supp. 2d 1052 (C.D. Cal. 2010), the district court rejected plaintiff's

22  claims that defendant, a federal prison physician, was deliberately indifferent "when, without first

23  reviewing plaintiff's medical file, defendant Santini prescribed medication to plaintiff, resulting

24  in plaintiff having a severe allergic reaction in which his eyelids, tongue, lips and testicles

25  became swollen. . . ."  Id. at 1059.  The court reasoned, "[s]ince plaintiff specifically alleges Dr.

26  Santini was not aware plaintiff would react negatively to the medication because he had not read

1   plaintiff's medical records ('[i]t's indisputable that Dr. Santini made the prescription without

2   previously reviewing the Plaintiff's medical records'), plaintiff's fifth cause of action fails to state

3   a claim on which relief can be granted." Id. at 1060 (internal citation to record omitted). Accord

4   Scott v. Bick, 2008 WL 449798, *3 (E.D. Cal. 2008) ("there is no Eighth Amendment violation

5   when jail officials give the wrong medication to an inmate unless they were aware the inmate

6   would react negatively to the medication"); Hardy v. 3 Unknown Agents, 690 F. Supp. 2d 1074,

7   1099 (C.D. Cal. 2010) (even assuming medical evidence of plaintiff's alleged allergy to the

8   subject medication, "[w]ithout evidence that [defendant physician] was aware of the potential

9   harm and consciously disregarded it, plaintiff has shown no more than negligence, if that" (citing

10  Toguchi, 391 F.3d at 1058); Murillo v. Thornton, 2008 WL 110899, *4 (S.D. Cal. 2008)

11  (prisoner's allegations that defendant "prescribed him the wrong medication and did not inform

12  him about the side effects," causing plaintiff "severe stomach aches and headaches for four

13  months," failed to sustain Eighth Amendment claim); Adsit v. Kaplan, 2005 WL 3242276, *6

14  (W.D. Wis. 2005) (physician's mistake in prescribing plaintiff a medication that caused an

15  allergic response does not support a deliberate indifference claim unless the "doctor were to

16  deliberately prescribe medication for an inmate for the very purpose of causing him to suffer an

17  allergic reaction," thus constituting an act that is "repugnant to the conscience of mankind")

18  (internal citations and quotation marks omitted); Davila v. Secure Pharmacy Plus, 329 F. Supp.

19  2d 311 (D. C. 2004) (no Eighth Amendment violation unless it can be shown that the pharmacist

20  acted with a "culpable state of mind" when he provided an incorrectly labeled medication);

21  Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998) (no Eighth Amendment

22  violation when the administration of the wrong medication was a mistake).

23          "Negligence on the part of an official does not violate the Constitution, and it is

24  not enough that he or she should have known of a risk. Instead, deliberate indifference requires

25  evidence that an official actually knew of a substantial risk of serious harm and consciously

26  disregarded it nonetheless." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004) (citations

1  omitted).  In the absence of any evidence supporting a reasonable inference that defendant Dr.

2  Tan acted with such conscious disregard, plaintiff's Eighth Amendment claim must fail.

3  VI.  Qualified Immunity

4              Pursuant to the court's finding that plaintiff has failed to sustain his Eighth

5  Amendment claim against defendant, the court need not reach defendant's alternative contention

6  that he is entitled to qualified immunity.  The first prerequisite for considering a defense of

7  qualified immunity is a determination, based on the facts alleged and viewed in the light most

8  favorable to plaintiff, whether defendant violated a constitutional right.  Saucier v. Katz, 533

9  U.S. 194, 201 (2001). Where the facts do not state a claim for violation of a constitutional right,

10  the court need make no further inquiry.  Id.

11  VII.  Conclusion

12              For the foregoing reasons, IT IS HEREBY ORDERED that:

13          1.  Defendant's motion for summary judgment (Dkt. No. 100), is granted; and

14          2.  This action is dismissed with prejudice.

15  DATED:  May 20, 2013

16

17

18                                                 KENDALL J. NEWMAN
                                                   UNITED STATES MAGISTRATE JUDGE
19  mont0800.msj

20

21

22

23

24

25

26